TRANSATLANTIC SHIPPING CO., INC. (ABSORBO BEER PAD CO., INC.) *v.* UNITED STATES (No. 4258)

---

[1] C. A. D. 118.

United States Court of Customs and Patent Appeals, April 1, 1940

*William Whynman* for appellants.

*Webster J. Oliver*, Assistant Attorney General (*Charles D. Lawrence*, special assistant to the Attorney General, and *Dorothy C. Bennett*, special attorney, of counsel), for the United States.

[Oral argument February 9, 1940, by Mr. Whynman and Mr. Lawrence]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

JACKSON, Judge, delivered the opinion of the court:

The merchandise involved in this appeal consists of wood pulp-board for beer mats, 25 shipments of which were exported from Germany at various times from November 1935 to March 1937, and imported by appellants at the port of New York.

The merchandise covered by 13 entries was invoiced at a C. I. F. price of $5.20 per one hundred kilos, the price being based on the gross weight. The balance of the merchandise covered by 12 entries was invoiced at $5.20 per one hundred kilos of net weight.

Entry 824376 was made at a value of the said invoice price, net, on the basis of export value. The appraiser returned the value of the goods at 14 reichsmarks per hundred kilos net, based on foreign value. This entry became a test case and under it six other entries were made under duress to meet the advance in value made by the appraiser. The shipments of all of these entries were made between November 7, 1935 and May 25, 1936.

Another entry, 700495, which also became a test case, was made on the basis of export value, $5.20 per hundred kilos of net weight. The appraiser advanced the value on the basis of foreign value to 14.25 reichsmarks, net. Under this test case 17 other shipments were entered under duress to meet the said advance. The period of shipment on this group was between June 12, 1936 and March 24, 1937.

Appellants appealed for reappraisement and after a trial before a single judge of the United States Customs Court, sitting in reappraisement, judgment was duly rendered dismissing the 25 appeals which had been consolidated for trial. The single judge held that the evidence in the record was not sufficient to overcome the presumption of correctness attaching to the value of the merchandise as found by the appraiser.

The judgment of the trial court was affirmed by the Third Division, Appellate Term, of said court, from the judgment of which appellants appeal.

Section 402 of the Tariff Act of 1930 defines foreign value and export value as follows:

(c) FOREIGN VALUE.—The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

(d) EXPORT VALUE.—The export value of imported merchandise shall be the market value or the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

Section 501 of the said act contains, among other provisions, the following:

* * * The value found by the appraiser shall be presumed to be the value of the merchandise and the burden shall rest upon the party who challenges its correctness to prove otherwise.

The record for appellants consists of the testimony of the president of the Absorbo Beer Mat Co., Inc., and an affidavit of the general manager of the manufacturing exporter, dated November 23, 1937. The evidence introduced by the Government consists of a report of a special agent of the Treasury Department, dated November 25, 1936.

The witness testified that his company was the importer of the merchandise and that it had no relation to the manufacturer except that of buyer and seller; that the imported wood pulpboard is known as quality "L" and that he did not know the difference between quality "L" and another quality of pulpboard made by the manufacturer until after the dates of importations herein; that the price to be paid for the merchandise was arrived at by agreement and that the nature of the agreement was that "he was to sell to us 400 tons of wood pulpboard at the price of $5.20 per hundred kilograms"; that no attempt was made to purchase from other manufacturers in Germany because, the witness said, the shipper herein was the largest manufacturer of the involved merchandise; that he did not compare the price paid for the merchandise with that of similar German mills; that competitors of his company "can buy there at the price I paid"; and that the quantities in which it was offered for sale "depends on

the request of the importer * * * You say you need so many tons"; and that the manufacturer had no price list.

In the affidavit it is stated, in substance, that the affiant is the general manager of the manufacturer and had been such during the years 1935, 1936, and 1937; that he is familiar with all of the activities of the company, including its export business; that among other articles the company manufactures beer mats or pads in which wood pulpboard is used, and that the company produces wood pulpboard for its own use and for export, but not for sale in Germany; that the wood pulpboard made by the manufacturer is of two qualities, known as "L" and "R" the difference being that quality "L" is light and will not separate into sheets, while quality "R" is made of layers pressed together and may be separated into sheets, and that the "R" quality costs more to produce than the other; that "L" quality is neither made nor sold in Germany "within the knowledge" of affiant by any other manufacturer; that the manufacturers of beer mats in Germany produce only for their own needs; that "L" quality was sold by his company for export to countries other than the United States during 1935, 1936, and 1937 as follows:

Belgium at RM 12 per 100 kg C.I.F. Brussels for shipments during 1936, and at RM 10.80 per 100 kg, C.I.F. Brussels, for shipments during 1937, not duty paid—at the prices and under the conditions set forth.

Affiant further states that during the years of 1935, 1936, and up to the date of the affidavit in 1937, there was but one sale of wood pulpboard made in Germany; that this sale was made by the manufacturer herein on or about June 6, 1936 and that the sale which was not of "L" quality goods was to a competitor in the manufacture of beer mats whose plant had been disabled as the result of an electric storm; that the price paid in said sale was not competitive and was not made in the usual wholesale quantities and in the ordinary course of trade. It is also stated in the affidavit that the manufacturer has no agreement limiting its exportations of the involved merchandise solely to any individual, firm, or company in the United States, but is willing to sell the same to anyone who wants to buy at the same price as that charged to appellant Absorbo Beer Pad Co., Inc.

The special agent of the Treasury Department, in his report, stated that information contained therein was obtained through his personal inspection of the records of the manufacturer, and from other data furnished by the said general manager of the manufacturer and its chief clerk. The report shows, on information stated to have been obtained from the general manager of the exporter, that wood pulp or pulpboard for beer mats has no regular market in Germany and is sold only to a few firms, virtually all of which are consumers, and that the manufacturer had three customers in the United States, two in other foreign countries, and one buyer in the German home market

during 1935 and 1936. The report shows that the manufacturer made one sale in Germany, dated June 15, 1936, of 17,500 kilos of wood pulp for beer mats, at a price of 14.25 reichsmarks per one hundred kilos net; that a Belgian customer pays 12 reichsmarks per hundred kilos, f. o. b. Brussels, since June, 1935, and that the same unit quotation was offered a buyer in Zurich, Switzerland.

The foregoing fairly summarizes the evidence.

The single judge, after considering all of the evidence adduced at the trial, stated in his opinion:

> I am unable to find sufficient evidence in this record to prove that the market value or price at the time of the exportation of the instant merchandise to the United States, at which such or similar merchandise was freely offered for sale to all purchasers in the principal markets of Germany, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, was the price or value claimed by the plaintiff in this case.
>
> Without giving a further résumé of the testimony in this case, I am decidedly of the opinion that it is not sufficient to overcome the presumption of correctness attaching to the action of the appraiser in the appraisement of all the instant merchandise.

Upon appeal, the Appellate Term in its opinion said:

> * * * The evidence offered by both sides at the trial is very meager, and was confined principally to the affidavit of the manufacturer and the report of the Treasury representative, both of which were unsatisfactory from the viewpoint of evidence.

The burden upon appellants was to overcome the presumption of correctness attaching to the local appraiser's valuation. In order to do so it was necessary to show that an export value existed for such or similar merchandise at the time of exportation of such merchandise to the United States and that such export value was less than the value returned by the local appraiser but higher than the foreign value of the merchandise, or that there was no foreign value as defined in section 402 (c) *supra*.

We must hold that there is no error of law in the judgment from which this appeal was taken, and, of course, our jurisdiction in reappraisement is limited to review of the judgment below on questions of law only. *United States* v. *Semon Bache & Co.*, 25 C. C. P. A. (Customs) 387, T. D. 49466. On the question of export value, the fact that the manufacturer sells at undisclosed prices to two unidentified customers in the United States as well as to the Absorbo Beer Pad Co., Inc., supported by no further evidence than that of the single witness who said he knew from his knowledge of the trade that his competitors could buy at the price he paid, does not in a statutory sense prove export value, as may be clearly observed by a mere reading of section 402 (d), *supra*. The statement made in the affidavit dated November 23, 1937, that the manufacturer is willing to sell to anyone at the same price charged to the Absorbo Beer Pad Co.,

Inc., is no proof of market value or price at the time of exportation of the merchandise, as required by the statute.

Since appellants have failed to show that an export value existed for such or similar merchandise at the time of exportation of such merchandise to the United States, they have not sustained their burden, and the appeal has been properly dismissed. *United States* v. *International Forwarding Co.*, 27 C. C. P. A. (Customs) 21, C. A. D. 56; *United States* v. *H. W. Robinson & Co.*, 25 C. C. P. A. (Customs) 395, T. D. 49484; *Lovell Dressel Co., Inc.*, v. *United States*, 25 C. C. P. A. (Customs) 64, T. D. 49064.

The judgment appealed from is *affirmed*.